UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                    CRIMINAL NO. 16-cr-20654

v.                                       HON. MARK A. GOLDSMITH

PHILIP LUCKY MCINTYRE,

       Defendant.

_____/

**Government's Sentencing Memorandum**

Defendant Philip McIntyre stands convicted of sex trafficking of a child, in violation of 18 U.S.C. §§ 1591(a); (b)(2); 1594. For the reasons stated in this memorandum, the government recommends that a sentence of **135–168 months' imprisonment** is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

**I.    Facts and procedural history**

    **A.    Initial investigation**

On May 24, 2016, the Southeast Michigan Trafficking and Exploitation Crimes (SEMTEC) task force was contacted by Detroit police concerning a missing child. The child (MV-1), a girl who had just turned 14 a couple of months prior, was

reported missing by her mother. Mom indicated that she believed her daughter was being posted on commercial sex websites. Mom provided police with MV-1's old cell phone, as well as her new cell phone number.

SEMTEC found two advertisements showing MV-1's image on a website entitled, backpage.com, a website devoted to sex trafficking. The advertisements had been posted on May 20 and May 23, 2016, listing the location as Detroit and Ann Arbor. MV-1's mother identified MV-1 in the backpage.com ad. In several of the images, MV-1 donned only a pair of pink underwear. The ads were for sexual encounters with MV-1.

SEMTEC called the phone number in the ad, which matched the cell phone number provided by MV-1's mother. While agents organized an undercover operation to recover MV-1, Mom located her and brought her home. SEMTEC interviewed her that same day. MV-1 said that she had run away from home earlier in May and had begun to perform commercial sex dates. She stated that a woman named "Bree" (identified here as S.S.) coordinated her dates. MV-1 consented to a review of her cell phone. They discovered:

- A contact under the name of "LUCK" for phone number (XXX) XXX-4759;
- The phone number that MV-1's phone communicated with most frequently (327 times) was phone number (XXX) XXX-4759 (LUCK);

- A series of text messages between MV-1, LUCK, and others about commercial sex dates, including the following messages sent or received on May 22, 2016:

| Date/Time | From | To | Message |
|---|---|---|---|
| 5:25:47 PM | LUCK | MV-1 | Are you gone take dick for the money for me |
| 5:26:09 PM | MV-1 | LUCK | Yes for u and only u |
| 6:05:00 PM | Customer One (C1) | MV-1 | Hi r u available now? Im in Ann Arbor |
| 6:06:26 PM | MV-1 | C1 | Im only doing incalls |
| 6:07:18 PM | C1 | MV-1 | Ok whats ur rate? |
| 6:08:46 PM | MV-1 | C1 | Short stay $120 half hour $150 hour $200 |
| 6:10:19 PM | C1 | MV-1 | Can u do hh for 50? |
| 6:10:26 PM | MV-1 | C1 | No sorry |
| 6:23:33 PM | C2 | MV-1 | Saw your ad |
| 6:24:36 PM | C2 | MV-1 | Trying to come play |
| 6:32:28 PM | MV-1 | C2 | Im only doing incalls |
| 6:33:23 PM | C2 | MV-1 | Ok where are you |
| 6:33:58 PM | MV-1 | C2 | Ann arbor |
| 6:40:04 PM | C2 | MV-1 | Ok cool I'll come |
| 6:30:21 PM | MV-1 | C2 | How long did u wanna see me for? |
| 6:40:53 PM 6:41:11 PM | C2 | MV-1 | Half hour maybe a hour<br>Hour if I'm enjoying myself |
| 7:11:55 PM 7:13:51 PM | MV-1 | LUCK | Im waiting on my 2 calls<br>Making this money for u pappi |
| 7:22:40 PM | LUCK | MV-1 | Ok |
| 9:04:35 PM | Customer Three (C3) | MV-1 | What's your donation |
| 9:05:13 PM | MV-1 | C3 | How long would u like to see me for? |

| 9:06:12 | C3 | MV-1 | Probably an hour. You ok with gfe? |
|---|---|---|---|
| 9:06:51 | MV-1 | LUCK | Whats gfe? |
| 9:08:04 PM | LUCK | MV-1 | Girlfriend effect which is no , he want you to treat him like he your man and you his girlfriend kisses and four play , say no |
| 9:08:32 PM | MV-1 | LUCK | Ok |
| 9:08:41 PM | MV-1 | C3 | No |
| 9:44:06 PM | MV-1 | LUCK | Papi someones here |
| 9:44:43 PM | LUCK | MV-1 | Ok for how long |
| 9:44:49 PM | MV-1 | LUCK | 10 minutes $120 |
| 9:45:02 PM | LUCK | MV-1 | K |
| 9:45:28 | LUCK | MV-1 | Let me know he leave |
| 9:45:28 | MV-1 | LUCK | Do u want me to stilltext u and tell you in good when I get the money |

As the investigation uncovered, "Luck" was identified as the defendant, Phillip Lucky McIntyre. MV-1's cell phone contained images of the defendant as well.

In a subsequent interview, MV-1 identified the defendant as her pimp. She said that he bought her new pink underwear and a bra, and he took pictures of her laying on a bed in hotels. The defendant used those images to create backpage.com ads for commercial sex dates for her. When she performed the dates, the defendant took all her money. The defendant drove her to the "dates" and would wait in the car or on the porch of the hotel. The defendant instructed her to charge $150.00 for a ten-minute "date" and $200.00 for a 20-minute "date."

SEMTEC arrested the defendant on September 19, 2016. Surveillance revealed that he had been at a hotel with a female just before his arrest. He agreed to an interview and made the following admissions:

- He worked on the street, where girls would come to him looking for a way to make money.
- He can tell from a girl's attitude how old she is, and if he finds out they are under 18, he tells them to leave.
- He has prostituted girls on and off for about four years.
- His primary goal was to keep the girls off drugs, and put them in better situations.
- He rented the rooms, told them what to do, and posted them on backpage.com.
- He listed five hotels that he had rented, including in the Detroit and Ann Arbor areas.
- He would keep half the money, but many girls wanted him to keep all the money they made.
- The woman known as S.S. has been with him for four years. She is also a prostitute.

When asked specifically about MV-1, the defendant immediately responded that MV-1 "is a liar." He initially said that MV-1 told him she was 18, and she only

spent one day with him. After SEMTEC agents confronted him with the cell phone records, he changed his story. He then stated that he made MV-1's backpage.com ad, but he claimed that he never received any money from her. Further, he acknowledged that he purchased her underwear, but said that he was helping her.

Other women associated with the defendant were interviewed. These adult women (in their young 20s) also stated that the defendant took out backpage.com ads for them, and the defendant kept all their money from commercial sex dates. The defendant also provided drugs to the drug-addicted women. The defendant had "rules" that the women had to follow when they "worked" for the defendant.

The defendant and the government entered into a Rule 11 plea agreement, allowing defendant to plead guilty to one count of sex trafficking of a minor This Court set sentencing for September 19, 2017, at 2:00 p.m.

## II. Section 3553(a) factors warrant a guideline sentence.

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover,

the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

### A.    The nature and circumstances of the offense

This is an offense that should not be taken lightly. Congress has placed steep penalties on crimes against children, and for good reason. Children, unlike adults, are unable to consent to sexual activity because they simply cannot comprehend the consequences of their actions in the same way as an adult. Particular to this case, children who engage in prostitution generally come from a background filled with problems. It is because of their vulnerabilities that people like McIntyre – a grown man – are able to convince them that having sex with strangers for money (money that McIntyre planned to keep) is an acceptable way for them to live their lives.

These girls are not "throw-aways": they are sisters, daughters, friends, individuals worthy of the same dignity and respect as anyone else. The fact that they have found themselves engaged in prostitution at a very early age speaks volumes to their personal histories and lack of proper care and guidance.

### B.    The history and characteristics of the defendant

The history and characteristics of this defendant also warrant a guideline sentence. As a juvenile (15 years old), he was charged with carry concealed pistol, and felonious assault. In 2005, he was convicted of delivery/manufacture cocaine, heroin or another narcotic (attempt), and sentenced to 1–5 years. That same year,

he was found guilty of felony unarmed robbery and felony firearm and sentenced to 2 years 6 months – 15 years; plus two years consecutive. His criminal history report indicates that he has an open warrants.

This defendant made a conscious choice to traffic a fourteen-year-old child. In looking at MV-1, she is quite obviously a child. Moreover, the defendant is a father. His choice to traffic women and children in the commercial sex industry will undoubtedly have a devastating effect on these children, who should be looking to McIntyre for inspiration, guidance, and advice. Instead, because of his selfish motives, these three children will spend at least the next ten years fatherless. Further, they will have to deal with the emotional baggage of the fact that their father took a fourteen-year-old child, and forced her to have sex with strangers, so he could make a buck.

**C. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense**

As noted above, child exploitation crimes are serious. This defendant actively engaged and underage girl into prostitution, while under his control. A guideline sentence in this case will promote respect for the law and provide a just punishment.

**D. Adequate deterrence and protection of the public**

This defendant needs to be deterred, and a guideline sentence will, hopefully, be enough time for the defendant to learn to control his actions. Shorter sentences

have done nothing to deter McIntyre's criminal activity. The public deserves to be free from this type of criminal activity in their neighborhoods.

    **E.    Providing defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; kinds of sentences available and the need to avoid unwarranted sentencing disparities**

The Bureau of Prisons has the expertise to classify and assign McIntyre to the appropriate facility. A guideline sentence in this case fits comfortably within the range of sentences that similarly situated defendants receive.

### III. Conclusion

The government recommends a sentence of 135–168 months.

    Respectfully submitted,

    Daniel L. Lemisch
    *Acting United States Attorney*

    s/ *Margaret M. Smith*
    Assistant United States Attorney
    211 W. Fort Street, Suite 2001
    Detroit, MI  48226
    Phone:  (313) 226-9135
    E-Mail: margaret.smith@usdoj.gov
    Bar No. P71413

Dated: September 11, 2017

## Certificate of Service

I hereby certify that on September 11, 2017, I electronically filed the Sentencing Memorandum for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system, which will send notification of such filing to the following via electronic mail:

>Kimberly Stout
>*Attorney for Defendant*
>wadesmom1@aol.com

>s/ Margaret M. Smith
>Assistant United States Attorney
>211 W. Fort Street, Suite 2001
>Detroit, MI  48226
>Phone:  (313) 226-9135
>E-Mail: margaret.smith@usdoj.gov