```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,

 5                 Plaintiff,

 6   -v-                                   Case No. 16-cr-20654

 7

     PHILLIP LUCKY MCINTYRE,
 8
                   Defendant.
 9   _____/

10

11                        SENTENCING HEARING

12          BEFORE THE HONORABLE MARK A. GOLDSMITH

13       Detroit, Michigan, Monday, September 25th, 2017.

14

15   APPEARANCES:

16   FOR THE PLAINTIFF:        MARGARET SMITH
                               U.S. DEPARTMENT OF JUSTICE
17                             211 West Fort Street
                               Suite 2001
18                             Detroit, MI 48226

19
     FOR THE DEFENDANT:        KIMBERLY W. STOUT
20                             370 East Maple Road
                               Third Floor
21                             Birmingham, MI  48009

22

23   David B. Yarbrough, CSR, FCRR, RMR
     Official Court Reporter
24   (313) 234-2619

25
```

1                           TABLE OF CONTENTS

2                                                              PAGE

3     WITNESSES:

4     NONE

5

6

7

8

9

10

11

12

13

14

15                              EXHIBITS

16    NONE

17

18

19

20

21

22

23

24

25

```
1              Detroit, Michigan.

2              Monday, September 25th, 2017.

3              At or about 11:53 a.m.

4                     --    ---    --

5          THE CLERK OF THE COURT:  Please rise.  The United

6    States District Court for the Eastern District of Michigan is

7    now in session, the Honorable Mark Goldsmith presiding.  You

8    may be seated.

9          The Court calls case number 16-20654, United States

10   of America versus Phillip McIntyre.  Counsel, please place your

11   appearance on the record.

12         MS. SMITH:  Good morning, your Honor.  Maggie Smith

13   appearing on behalf of the United States.

14         MS. STOUT:  Good morning.  Kimberly Stout on behalf

15   of Mr. McIntyre who's to my left, your Honor.

16         THE COURT:  All right, good morning.

17         MS. STOUT:  Good morning.  Would you like us at the

18   podium?

19         THE COURT:  No, you can stay right there, that's

20   fine.  All right, we're here for sentencing.  Is everyone ready

21   to proceed?

22         MS. SMITH:  Yes, your Honor.

23         MS. STOUT:  Yes, your Honor.

24         THE COURT:  Have the attorneys reviewed the

25   presentence investigation report?
```

1          MS. SMITH:  I have, your Honor.

2          MS. STOUT:  We have, your Honor.

3          THE COURT:  All right.  Are there any corrections or

4    additions?

5          MS. STOUT:  Not --

6          MS. SMITH:  Not -- sorry.

7          MS. STOUT:  I'm sorry, go ahead.

8          MS. SMITH:  Not for the United States.

9          MS. STOUT:  No, your Honor.  There was a change in

10   the guideline range, picked unfortunately by probation based on

11   prior record which is included in here now so the guideline

12   range is actually 135 to 168, contrary to the Rule 11.  So

13   that's very significant, but it's already included, your Honor.

14   Thank you.

15         THE COURT:  All right and Ms. Stout, have you gone

16   over the report with your client?

17         MS. STOUT:  Yes, I have.

18         THE COURT:  All right.  The Court adopts the report

19   as its findings in this matter.  The defendant is before the

20   Court for sentencing.  He pled guilty to count one of the

21   indictment which charged him with sex trafficking of a minor.

22   The guilty plea was accepted.  The Court took the Rule 11 Plea

23   Agreement under advisement.  Are both sides still urging me to

24   adopt the Rule 11 Plea Agreement?

25         MS. SMITH:  Yes, your Honor.

1            MS. STOUT:  Yes, your Honor.

2            THE COURT:  All right, the Court does adopt it.

3   We'll turn now to computation of the guidelines.  The

4   guidelines are advisory and not mandatory, but we do need to

5   calculate them.

6            The Rule 11 Plea Agreement utilized the 2016

7   guidelines manual, sets out a base offense level of 30.  Two

8   levels are added because the defendant used a computer to

9   entice, encourage, offer, solicit a person to engage in

10   prohibited sexual conduct with a minor.  Two levels are added

11   because the offense includes the commission of a sex act.

12   Three levels are deducted for acceptance of responsibility and

13   his total offense level is therefore 31.  Is everybody in

14   agreement with that?

15            MS. SMITH:  Yes, your Honor.

16            MS. STOUT:  Yes, your Honor.

17            THE COURT:  Turning to his criminal history, he has

18   six criminal history points for prior convictions.  That places

19   him in category three.  Is everyone in agreement with that?

20            MS. SMITH:  Yes, your Honor.

21            MS. STOUT:  Yes, your Honor.

22            THE COURT:  Based on an offense level of 31 and a

23   criminal history category of three, the defendant's guideline

24   imprisonment range is 135 months to 168 months.  Is everyone in

25   agreement with that?

1           MS. SMITH:  Yes, your Honor.

2           MS. STOUT:  Yes, your Honor.

3           THE COURT:  Let's turn now to calculation of --

4    pardon me, for consideration of our sentencing options.  The

5    statute sets a minimum term of imprisonment of 10 years.

6    There's a maximum term of life.  The Rule 11 anticipated a

7    guideline range of 151 to 188.  It turns out that that was

8    mistaken.  The actual guideline range is 135 to 168.

9           The Rule 11 provided for a sentence that did not

10   exceed the top of the guidelines and that would also be at

11   least the statutory minimum of 120 months.  I just want to be

12   clear how the attorneys are viewing this correction now under

13   the Rule 11.  Is it agreed that the highest sentence allowed

14   under the Rule 11 is 168?

15          MS. SMITH:  Your Honor, technically the Rule 11

16   allows for 151 to 188, but because we made an error in the

17   criminal history, I have agreed not to seek a sentence higher

18   than 168 which are the properly-calculated guidelines.

19          MS. STOUT:  Yes, your Honor.

20          THE COURT:  What's your view, Ms. Stout?

21          MS. STOUT:  That's my understanding with Ms. Smith

22   and I'm seeking a statutory, the statutory sentence, the

23   statutory mandatory minimum of 10 which is allowable in the

24   Rule 11, but also I agree that the top would be 168.

25          THE COURT:  Well, Ms. Smith, is it your view that the

1    Rule 11 caps the sentence now at 168?

2         MS. SMITH:  I think that I would be willing to say

3    that we can cap it at 168 because of the way in which it was

4    calculated.  In some other cases, sometimes there's an error in

5    calculating numbers, but in this case there was an error with

6    the actual criminal history.  So in fairness to the defendant,

7    I would be willing to say that we would be bound by a 135 to

8    168 guideline range because the error was a criminal history

9    error.

10        THE COURT:  With respect to supervised release, the

11   statute provides for at least five years and up to life.  The

12   guidelines are the same.  Defendant is not eligible for

13   probation under either the statute or the guidelines.

14        Maximum fine under the statute is 250,000 dollars.  A

15   guideline fine range is 30,000 dollars to 300,000 dollars.

16   Restitution is required under Title 18 United States Code,

17   Section 3663(a).  Is everyone in agreement with that recitation

18   of our sentencing options?

19        MS. SMITH:  Yes, your Honor.

20        MS. STOUT:  Yes, your Honor.

21        THE COURT:  All right.  At this time I'll invite Ms.

22   Stout to make any argument she wishes on behalf of the

23   defendant.  Then the defendant can address the Court directly

24   if he wishes to.  We'll hear from Ms. Smith for the government.

25   Is there any victim who wishes to make a statement here in open

1   court?

2          MS. SMITH:  Your Honor, there is nobody present

3   today.  I did forward the letters from the Court and I will use

4   portions of those in my allocution.

5          THE COURT:  You forwarded letters from a victim and

6   the victim's mother to the Court?

7          MS. SMITH:  Correct.

8          THE COURT:  Which I have read.  Have you seen those,

9   Ms. Stout?

10         MS. STOUT:  I have.  Thank you, your Honor.

11         THE COURT:  Okay.  Go ahead, Ms. Stout.

12         MS. STOUT:  Thank you.  Your Honor, I filed a

13  sentencing memorandum which I know you received as well as a

14  sealed Exhibit A which I won't be discussing here, but I know

15  you've received it and have certainly reviewed it.

16         THE COURT:  I have read both of those.

17         MS. STOUT:  Thank you.  Your Honor, we, my client and

18  I certainly recognize the seriousness of this offense.  There's

19  no question about that.  This was a 14-year-old runaway who

20  unfortunately was on the street and according to the sentencing

21  memorandum of the government had begun engaging in commercial

22  sexual activity.  She encountered my client and essentially to

23  put it frankly, your Honor, he became her pimp.

24         We recognize that the victim's going -- had ongoing

25  mental issues and will continue now and my client is remorseful

1    for that, for that very fact.  I think what he's done here is

2    demonstrated as much as contrition that he can.  He's pled

3    guilty.  He tried to assist the government.  He's clearly

4    someone who is entitled to -- who can be redeemed and should be

5    given some mercy, your Honor, despite the seriousness.

6           He's always admitted and never denied what he was

7    doing for a living which was working with commercial sex with

8    adult women.  He recognizes that that's totally the wrong

9    avenue to be in.  Sadly, I've gotten calls from a couple of

10   these women that said they would be dead without him.  The

11   dynamics are beyond me, but it is probably a result of the life

12   that the girls and my client have grown up with which is

13   unfortunate.

14          There's been a lot of making amends in this which is

15   good.  My client's father is here.  His sister LaToya is here.

16   His dear friend Danica is here for support, but his childhood

17   basically was on the streets by himself and that's reflected by

18   his criminal history and what went on with him.  That's not an

19   excuse, your Honor, and it's not something that my client

20   expects sympathy for.  It's an explanation of how maybe these

21   things happened and it snowballs.

22          I think because of all those factors, that 10 years

23   is a very sufficient, significant sentence.  10 years.  I

24   remember from old days Judge Cohn would always say five years

25   is a long time and certainly 10 years, a decade of your life if

1    we reflect upon decades of our life which I think we all in

2    this courtroom can now, we change.  We grow.  We learn.  The

3    pain causes that.

4         The median sentence as I pointed out to this Court is

5    120 months for both child porn and sexual abuse cases.

6    Actually the median and I'm saying median sentence for child

7    porn in the national is 100 months.  It doesn't specify more

8    exactly what these offenses involved and again, we're not

9    minimizing the offense, but 10 years is a very long time.  I'm

10   asking for that sentence, your Honor.

11        Clearly my client has a drug problem, has always had

12   a drug problem.  That's usually associated with life on the

13   streets and I'd ask you to recommend the program and I'd ask

14   you to recommend Milan so he will not be too far from the

15   little support that he has and the children that he has and I

16   do believe my client wants to address the Court, too.  Thank

17   you, your Honor.

18        THE COURT:  All right.  Mr. McIntyre?

19        THE DEFENDANT:  I just wanted to, I just wanted to

20   apologize to the family of my -- I wanted to apologize to the

21   family for my activities and my ways and my, and my decisions I

22   have made to cause them to be led here in front of you today

23   and I recognize and I understand what I've done was wrong and I

24   take full responsibility for all the decisions I have made and

25   all I can ask today is for you to have leniency and mercy upon

1    my life and give me another chance to be a better person, a

2    better man, to make better decisions for myself, my kids, make

3    better decisions to represent my community in a more positive

4    way and that's pretty much all I could say on my behalf.

5            THE COURT:  All right, thank you.

6            MS. STOUT:  Thank you, your Honor.

7            THE COURT:  All right.  Ms. Smith?

8            MS. SMITH:  Thank you, your Honor.  This case is

9    about this defendant who took a child who was just barely 14

10   years old and if your Honor recalls we had a detention hearing

11   in case down in Judge Friedman's courtroom and you had an

12   opportunity to see this child's face; very clearly, very

13   obviously a child.  He took her.  He provided her underwear.

14   He took her picture, posed specifically to put her on Back Page

15   and advertise her for commercial sex dates.

16           This isn't a case where we've got a girl who's just

17   on the edge of 18.  She had just turned 14 years old and he

18   took her and he trafficked her.  This is absolutely a serious

19   offense and if the Court recalls, this defendant also had an

20   opportunity to return her because he ran into her mother in the

21   parking lot of a gas station and her mother said have you seen

22   my child and when faced with that opportunity, he decided to

23   lie and say no.

24           This area as this Court knows has seen an uptick in

25   human trafficking cases and when we look about what the

1    appropriate punishment is, we need to look at not just specific

2    deterrence, but also general deterrence.  Lengthy sentences

3    will serve as a deterrent not only to those individuals who,

4    like McIntyre, think that they can make a buck on the backs of

5    small children, but also, too, this would serve a specific

6    deterrence and defense attorney talked about decades and

7    decades is a long time, but if you look at this defendant's

8    criminal history, decades of opportunities is exactly what he

9    has been provided over the years.  Probation terms, parole

10   terms, opportunities to better himself and at every chance he

11   rejected them and decided to continue a life of crime.  This

12   defendant, as stated in the PSR, acts as if he is above the law

13   and shorter sentences just simply have not worked.

14           In terms of the statistical data on child pornography

15   offenses, I want to be clear that this is not a child

16   pornography offense and so the data of 120 months as being a

17   median is not, it can't be viewed as accurate in terms of sex

18   trafficking of children.

19           I submitted to the Court the impact statements from

20   the victim and her mother in this case and your Honor, they

21   have a right to be heard and when you ask victims of sex

22   trafficking what that's like and where did they go, this is

23   what victim's mother said.  Quote, "I am now going through

24   family therapy with my daughter so I can help her get through

25   this and still every day is a battle.  I have to sit in her

1    room with her until she falls asleep because she's afraid that

2    he's going to come after her.  She wakes up at night screaming

3    because of the nightmares and at times shuts down and won't

4    talk to anyone."

5         And the victim herself said as to the defendant,

6    quote, "You made me think you cared about me and now it's so

7    hard for me to trust people.  I'm so afraid of you and my worst

8    fear is that some day I will run into you."

9         Your Honor, these are the voices of the pain.  This

10   girl is traumatized forever because when this offense is over,

11   this defendant will go into the Bureau of Prisons and serve his

12   time, but for these victims, the emotional toll is

13   never-ending.  I'm asking the Court to fix a sentence that will

14   ensure that this child does not have to worry that he's going

15   to come after her like she so fears.  For all of these reasons,

16   I would ask that you impose a sentence somewhere between a 135

17   and 168 months.

18        MS. STOUT:  Your Honor, may I have one quick reply?

19        THE COURT:  All right, go ahead.

20        MS. STOUT:  I had quoted the sexual abuse statistics

21   medium of being 120.  I also indicated that child porn was

22   similar, but I specifically said the sexual abuse, whatever

23   that encompasses which I'm assuming it encompasses this sort of

24   crime.  Thank you.

25        THE COURT:  Well, just to clarify I read in your

1    memorandum as follows; quote, "The instant charge does not have

2    its own category on the table attached, however it could be

3    considered a crime include under either the category of child

4    pornography or the category of sexual abuse.  In 2016 the

5    median sentence for both of these categories was 120 months."

6            MS. STOUT:  Yes, your Honor.

7            THE COURT:  End quote.  That, you still stand by that

8    statement.

9            MS. STOUT:  I do and I have a chart.  I have no idea

10   why I didn't attach it to the sentencing memorandum, just an

11   inadvertent error, but if you'd like to see the table, I did

12   print it from the U.S. Sentencing Commission 2016 data file.

13           THE COURT:  Yes.  You want to pass that up?

14           MS. STOUT:  Thank you.

15           MS. SMITH:  I don't have it either.

16           (Pause)

17           THE COURT:  Ms. Smith, do you know why human

18   trafficking is not broken out in table seven and is there some

19   other table that might have that information?

20           MS. SMITH:  No, I don't know, your Honor.  I know

21   that with a mandatory minimal of 120 months in sex trafficking

22   of a minor, it seems like -- I don't know if it goes into the

23   sexual abuse.  It certainly wouldn't go in the child

24   pornography category because this is a completely different

25   statute.  If it does fit in the sexual abuse, I would say that

1    it probably is encompassing not just that, but also the

2    misdemeanor sexual assault on the airplane cases that are

3    federal crimes as well and so that could explain why there's a

4    median at 120 months coming out of there.

5              MS. STOUT:  But on the other hand, I would suggest it

6    talks also about people that take people across borders that

7    are immigrants and horrific -- I mean, there's a real span in

8    this sort of offense, your Honor.  We're talking about and

9    again I don't mean to minimize it by though means, but we're

10   talking about one runaway girl that my client made the horrific

11   decision to encounter and abuse, we're not talking about

12   carloads or crossing state lines or so there's a big --

13             THE COURT:  Well, do you have any information on

14   those other circumstances you're talking about, many victims or

15   crossing state lines with victims?  Do you have any information

16   on median sentences?

17             MS. STOUT:  Your Honor, my research, it was limited.

18   It's limited in part because there's not a lot of breakdown.  I

19   would certainly, umm, be grateful for an opportunity to do

20   further research and certainly Ms. Smith could, too, on what

21   this looks like in other tables.  That's what I came to in my

22   research.  Those are usually, umm, the tables that we use with

23   FDO and tables that we're directed to.  There's just not a lot

24   of other breakdown unless you get incredibly specific which I'd

25   be more than happy to do.

```
1              THE COURT:  Ms. Smith?

2              MS. SMITH:  Well, I don't know that that's

3    necessarily true and I'm not sure she would like the answer she

4    comes up with if she's just looking at sex trafficking.

5    Anecdotally I can say the cases in this building because of 120

6    months mandatory minimum, the average is not 120 months.  In

7    fact, last week Judge Friedman just imposed a sentence of over

8    23 years on a sex trafficking case.

9              So my point is only this, your Honor.  That data that

10   she's asking you to consider as a starting point is, it has a

11   faulty premise that it's, A, including sex trafficking and B,

12   that the Court ought to consider this entire range of crimes

13   when determining what the appropriate sentence should be.  The

14   appropriate analysis as the Court knows is to begin with the

15   proper calculation of the guidelines and then make a

16   determination if this defendant fits within the heartland of

17   those criminals and if so, a guideline sentence is appropriate.

18   If he does not, then there's either a mitigator that brings him

19   down or an aggravator that brings him up.  I -- my argument is

20   that that table is an unreliable piece of information because

21   of what it lacks and I don't see that we need to do additional

22   research in order to follow what Congress has asked courts to

23   do when they sentence.

24             MS. STOUT:  And I really wouldn't disagree, your

25   Honor, because whoever got 23 months in front of Judge
```

1    Friedman --

2              MS. SMITH:  Years.

3              MS. STOUT:  -- I am certain it wasn't one 14-year-old

4    runaway.  I am certain the facts are very different and its

5    guidelines were very different.  The guidelines here are not

6    that much higher for 120 to 135 being the bottom and

7    considering the history and his life and all of the

8    circumstances, I'm asking for a minor departure your Honor

9    based on the statutory minimum imposed by Congress.

10             I think that this is being blown out of proportion

11   with all due respect to the victim who I'm sure is suffering

12   greatly and will always; that she was removed from her home for

13   unknown reasons, I am sure she's suffering and I don't know the

14   full extent of it and he is wrong and he's said he's wrong and

15   he's apologetic.  He's done everything he can to come forward

16   and redeem himself and ask for forgiveness, so we can't compare

17   him with human trafficking which sounds so torture rouse.  Umm,

18   he's a pimp.  He's a pimp, your Honor.  That's what he is.

19   It's old as time.  He's a pimp, shame on him and I think 10

20   years would be plenty for him to decide not to pimp anymore.

21   Thank you, your Honor.

22             THE COURT:  Well, I'm not clear on what you're

23   arguing.  Are you saying sex trafficking offenses don't provide

24   us with any measure of a benchmark because they're so different

25   than the circumstances of this offense?  I thought before you

```
1    were showing me table seven because you thought what courts had
2    done in other sex offenses which don't even involve trafficking
3    necessarily, child pornography and sexual abuse, should provide
4    this Court with some benchmark.  Then I heard you say well
5    maybe you could do more research and come up with a more
6    fine-tuned kind of benchmark that targets trafficking
7    specifically.  Then I heard you say well, he's just a pimp,
8    it's just one person, it's not really like all the other
9    trafficking cases so you're saying few different things.
10               MS. STOUT:  You're right.
11               THE COURT:  So tell me, which one do you want me to
12   focus on?
13               MS. STOUT:  You're right, your Honor.  I felt and I
14   could be wrong that sex abuse seems to cover generally what
15   this was.  Now if the Court disagrees or Ms. Smith disagrees,
16   they certainly have a right to.  I don't know the specifics, I
17   don't have it so maybe it should just be discounted.
18               This is a mandatory minimum case though set by the
19   Legislature.  I think those guidelines are not that far away
20   from the mandatory minimum and that's what I'm asking for so if
21   the Court wishes to discount that because it's not specific
22   enough, I certainly understand.  I just thought that that term,
23   sex abuse, seems somewhat fit where we are today.  I, I -- I --
24   you know, so that's what my position is, if that's clear.
25               THE COURT:  Okay.  Anything else, Ms. Smith?
```

1          MS. SMITH:  No, your Honor.

2          THE COURT:  All right.  The Court must follow the

3    statute enacted by Congress regarding imposition of a sentence.

4    That's Title 18 United States Code, Section 3553.  That statute

5    requires a Court to impose a sentence that is sufficient, but

6    not greater than necessary to comply with the purposes that are

7    set out in the statute.  Those purposes are for a sentence to

8    reflect the seriousness of the offense, to promote respect for

9    the law, to provide just punishment for the offense, to afford

10   adequate deterrence to criminal conduct, protect the public

11   from further crimes of the defendant and provide the defendant

12   with needed educational, vocational training, medical care or

13   other correctional treatment in the most effective manner.

14          The statute goes on to instruct courts to take into

15   account a number of factors including the nature and

16   circumstances of the offense, the history and characteristics

17   of the defendant, the kinds of sentences available, the

18   sentencing guideline range, pertinent policy statements of the

19   Sentencing Commission, the need to avoid unwarranted sentence

20   disparities among defendants with similar records who have been

21   found guilty of similar conduct and the need to provide

22   restitution to victims of the offense.  This Court takes into

23   account all of those factors in fashioning a sentence that it

24   believes is sufficient, but not greater than necessary to

25   accomplish the sentencing goals of the statute.

1          In terms of the seriousness of the offense, it cannot

2    be debated that this is a most serious offense.  Sex

3    trafficking of a minor involves the exploitation of a most

4    vulnerable person in a way that can have devastating long-term

5    consequences.  It's for that reason that there is a mandatory

6    minimum of 10 years and the possibility of life in prison.

7          The circumstances of this offense are very grave.

8    This victim was a 14-year-old child.  She obviously suffered

9    from emotional difficulties and the impact of this crime has

10   affected her in a profound way as reflected in the letter that

11   she wrote to the Court and as reflected in the letter written

12   by her mother.  The exploitation that this defendant engaged in

13   will undoubtedly impact this victim for a long time to come,

14   perhaps for the rest of her life.  She articulates how

15   difficult it is for her to trust anybody and it's unclear at

16   this point how long that kind of severe consequence will ever

17   be ameliorated, if it ever will be.  So the nature of this

18   crime and its particular execution here by this defendant is

19   the most grievous.

20         The Court also has to look at this defendant's

21   personal history and his characteristics.  Unfortunately for

22   the defendant, this is not his first contact with the criminal

23   justice system.  Putting aside the juvenile adjudications and

24   looking only at his adult criminal convictions, the Court notes

25   that 2005 he was convicted of attempted delivery of controlled

1    substances and in Michigan state court.  He was sentenced to

2    prison for that conviction.  The sentence was a

3    one-to-five-years sentence.  He was also convicted of unarmed

4    robbery, felony firearm, so he comes to this Court not simply

5    as a pimp as defense counsel characterized him, but as someone

6    who has re-offended in serious ways.  Drugs, robbery, felony

7    firearm and now sex trafficking of a minor.

8         The Court must look at the total picture and has

9    reviewed the defendant's personal history.  He does have family

10   support.  He has brought children into the world.  He has

11   acquired a G.E.D.  He has struggled with drug use according to

12   the presentence investigation report.  The TCU drug screen five

13   assessment shows that he has a severe drug or alcohol-related

14   problem.  The Court takes all of these factors into account in

15   fashioning a sentence that is sufficient, but not greater than

16   necessary to accomplish the sentencing goals of the statute.

17   In particular, the Court's concerned about protecting the

18   public from further crimes of this defendant, deterring others

19   who would imitate his conduct and vindicate the law that he has

20   violated and ultimately to hand down a sentence that reflects

21   just punishment for this offense.

22        The Court does not believe that a sentence at the

23   statutory minimum or even the bottom of the guidelines would be

24   appropriate in this case.  It should be mentioned the Court has

25   reviewed all of the filings that have been made in this case

1    and has taken into account all of the statements made in those

2    filings, both by the government and by defense counsel.  The

3    Court has taken into account all of those matters in reaching

4    its conclusion regarding what is an appropriate sentence in

5    this case.

6          The Court does believe that a significant custodial

7    sentence is necessary because of the grievous act of defendant

8    and considering his criminal history as well.  Therefore,

9    pursuant to the Sentence Reform Act of 1984 and having

10   considered the sentence guidelines which are advisory and not

11   mandatory and having taken into account all of the factors that

12   are contained in Title 18, United States Code, Section 3553,

13   the Court imposes the following sentence:  It commits this

14   defendant to the custody of the United States Bureau of Prisons

15   for a term of 168 months.

16         Upon release from imprisonment, he'll be placed on

17   supervised release for a term of five years.  It's further

18   ordered that he pay the mandatory special assessment of 5,100

19   dollars pursuant to the Justice For Victims of Trafficking Act

20   of 2015.  Restitution will be determined at a later time, but

21   it is ordered.  The Court waives the imposition of a fine, cost

22   of incarceration, cost of supervision due to the defendant's

23   lack of financial resources.  Mandatory drug testing is

24   ordered.

25         While on supervision, he'll abide by the standard

```
 1     conditions as adopted by our Court.  He shall also comply with
 2     the special conditions that are set out in paragraphs 88 and 89
 3     of the presentence investigation report.  The Court has no
 4     objection to the defendant being lodged at Milan and urges that
 5     he be placed in a drug rehabilitation program while in prison.
 6              The Court also wants to specifically mention that
 7     with regard to the argument pertaining to table seven, the
 8     Court doesn't believe that that table provides a focused
 9     collection of information regarding this defendant's particular
10     crime and therefore the Court does not find any guidance from
11     table seven which defendant made reference to in his sentencing
12     memorandum.  Is there any objection to the sentence?
13              MS. SMITH:  Not from the United States.
14              MS. STOUT:  My client has waived his right to appeal,
15     so and it's within the guidelines so --
16              THE COURT:  I'm sorry, you're going to have to speak
17     up.
18              MS. STOUT:  The Rule 11 waives his right to appeal
19     within the guidelines your Honor, so I don't believe I have a
20     basis right now for an objection.
21              THE COURT:  Mr. McIntyre, I'm going to tell you about
22     your appeal rights.  You can appeal your conviction if you
23     believe that your guilty plea was somehow unlawful or
24     involuntary or if is some other fundamental defect in the
25     proceedings not waived by your guilty plea.  Under some
```

1    circumstances, a defendant may also appeal his sentence,

2    however a defendant may waive a right to appeal his conviction

3    and/or sentence and in your plea agreement with the government,

4    you did waive some of your rights in that regard.  Such waivers

5    are generally enforceable, but if you believe the waiver itself

6    is not valid, you can present that theory to an appellate

7    court.  In any case, if you wish to appeal, you have 14 days to

8    do so.  If you cannot afford an attorney, this Court will

9    appoint an attorney to represent you and the clerk of the Court

10   will prepare the necessary notice of appeal on your behalf.

11           I'm going to order that the presentence investigation

12   report be furnished to the United States Bureau of Prisons and

13   to the United States Sentencing Commission.  All other copies

14   of the report will remain confidential in accordance with the

15   practice of this Court.  Are there any other matters to be

16   taken up?

17           MS. SMITH:  Not from the United States.

18           MS. STOUT:  No, your Honor.  Thank you.

19           THE COURT:  All right.  Then defendant is remanded.

20   Thank you.

21           MS. SMITH:  Thank you.

22           (Sentencing concluded at 12:39 p.m.)

23                       --    ---    --

24

25

1        C E R T I F I C A T E

2

3

4

5

6

7        I, David B. Yarbrough, Official Court

8    Reporter, do hereby certify that the foregoing pages

9    comprise a true and accurate transcript of the

10    proceedings taken by me in this matter on Monday,

11    September 25th, 2017.

12

13

14

15

16    7/13/2018              /s/ David B. Yarbrough

17    Date                   David B. Yarbrough,
                              (CSR, RPR, FCRR, RMR)
18                           231 W. Lafayette Blvd.
                              Detroit, MI  48226
19

20

21

22

23

24

25