UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

              Case No. 16-cr-20654
                  18-cv-11800
vs.
              HON. MARK A. GOLDSMITH
PHILIP LUCKY MCINTYRE,

   Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO VACATE SENTENCE (Dkt. 46)

This matter is before the Court on Defendant Philip Lucky McIntyre's pro se motion to vacate his sentence under 28 U.S.C. § 2255 (Dkt. 46). The Government filed a response opposing McIntyre's motion (Dkt. 59). McIntyre, through court-appointed counsel, subsequently amended his motion to vacate to assert an additional argument (Dkt. 66). The Government filed a response (Dkt. 70), and McIntyre filed a reply (Dkt. 71). On May 10, 2021, the Court held an evidentiary hearing. For the reasons that follow, the Court denies McIntyre's motion to vacate his sentence.

### I. BACKGROUND

On May 16, 2017, McIntyre pleaded guilty to sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a). Plea Agreement (Dkt. 31). McIntyre was sentenced on September 25, 2017, to 168 months' imprisonment, to be followed by five years of supervised release. See Judgment (Dkt. 39). McIntyre did not appeal his conviction or sentence.

In his pro se motion to vacate, McIntyre raises three grounds that he claims entitle him to relief: (i) the ineffective assistance of trial counsel, (ii) his actual innocence, and (iii) violation of Tenth Amendment principles of federalism. Mot. at PageID.180–183. In his amended motion,

McIntyre advanced an additional argument in support of his claim of ineffective assistance of counsel. Am. Mot. at 3 (Dkt. 66). During the evidentiary hearing, McIntyre withdrew the actual innocence and the Tenth Amendment claims raised in his § 2255 motion. Evidentiary Hr'g Tr. at 4 (Dkt. 78). Accordingly, those two claims are denied as moot, and the Court proceeds to evaluate McIntyre's ineffective assistance claim.

## II. STANDARD OF DECISION

This motion is brought pursuant to 28 U.S.C. § 2255, which provides the pertinent standard of decision:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005). Non-constitutional errors are generally outside the scope of § 2255 relief. See United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing "a fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." Watson v. United States, 175 F.3d 486, 488 (6th Cir. 1999).

## III. ANALYSIS

Pursuant to the Sixth Amendment, a criminal defendant has the right to "reasonably

effective assistance" of counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prevail on a claim of ineffective assistance, a habeas petitioner must show that (i) his attorney's performance fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that this deficiency prejudiced the outcome. Hill v. Lockhart, 474 U.S. 52, 57–59 (1985).

To satisfy the performance element of this test, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential, and there is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 689–690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. Id. at 689.

As to the prejudice element, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceeding. Id. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686. In the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Here, McIntyre asserts two theories of ineffective assistance. The first theory, advanced in McIntyre's pro se motion, alleges that trial counsel—attorney Kimberly Stout—provided ineffective assistance during the pretrial, plea negotiation, and sentencing phases of the

3

proceedings. Mot. at PageID.180–183. The second theory, advanced in his amended motion filed by court-appointed counsel, asserts that Stout was ineffective because she failed to object to certain special conditions of his supervised release. Am. Mot. at 3. The Court addresses each of these theories in turn.

**A. Pretrial, Plea Negotiation, and Sentencing Phases**

In his pro se motion, McIntyre alleges that Stout failed to (i) investigate and raise possible defenses such as impersonation and mistaking the victim's age, (ii) interview witnesses such as the victim and the victim's mother, and (iii) present mitigation evidence. Mot. at PageID.180, 190–192. McIntyre also claims that Stout provided him inaccurate advice regarding his plea and failed to advise him of the elements of the charged offense, the guidelines calculation, and the possible penalties. Id. at PageID.180, 192. He further contends that Stout pressured him into accepting the plea offer. Id.

Following the evidentiary hearing, each side submitted proposed orders for the Court to consider. In McIntyre's proposed order, he conceded that "he has not shown that 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,'" and that "[t]his is enough to deny relief on Ground One as to the ineffectiveness claims going toward McIntyre's conviction." Def. Proposed Order at 6 (attached to opinion as Exhibit 1). Because McIntyre did not concede that Stout did not commit errors, the Court reviews the evidence to address whether her conduct fell below an objective standard of reasonableness.

During the evidentiary hearing, the Government presented testimony from Stout that convincingly refutes McIntyre's allegations. In her 34 years as a practicing criminal defense attorney, Stout has handled a number of child-exploitation cases. Id. at 6, 19–20. Upon being retained as counsel for McIntyre, Stout fully reviewed the discovery, which included hotel receipts

4

in McIntyre's name, FBI forms wherein the victim identified McIntyre as her pimp, and text messages between McIntyre and the victim discussing sexual transactions. Stout Aff. ¶ 5 (Dkt. 59-1). Throughout the course of her representation, Stout met with McIntyre approximately nine times and kept in regular contact with his friends and family. Evidentiary Hr'g Tr. at 12.

During their meetings, Stout and McIntyre discussed potential defenses, including McIntyre's position that he did not know the victim was underage. Id. at 17. In Stout's view, this was not a viable defense based on the evidence and on McIntyre's admission that he knew the victim was a runaway. Id. They also discussed McIntyre's position that another individual impersonated him by using his phone to arrange sexual transactions for the victim. Id. Again, it was Stout's professional opinion that the evidence contradicted McIntyre's assertions. Id. at 17–18.

McIntyre also asked Stout to interview two of his associates, the victim, and the victim's mother. Id. at 18–19. Stout interviewed McIntyre's associates Sarah and Sabrina, both of whom were commercial sex workers. Id. at 20–22. Stout determined that Sarah would not be a suitable witness because she had no relevant information, Stout Aff. ¶ 4, and because she had active warrants out for her arrest, Evidentiary Hr'g Tr. at 20–21. Nor did Stout believe Sabrina to be a suitable witness, as she admitted to having set up "dates" for the minor victim and could have been criminally charged for her involvement. Evidentiary Hr'g Tr. at 21–22. Additionally, Sabrina informed Stout that she warned McIntyre several times that the victim was underage. Id. at 21.

Though Stout made inquiries, the prosecution informed her that the victim was unavailable for an interview. Id. at 19. In Stout's experience, child victims are rarely accessible to defense attorneys due to the sensitivity of the offense and the protections afforded to minor victims. Id. at 19–20. Stout also discussed the victim's mother with the prosecution. She learned that while

5

McIntyre believed that the mother would support his claim that he attempted to reunite her with the victim, the prosecution indicated that the mother contradicted this representation in an interview with law enforcement. Id. at 19.

Based on her assessment of the evidence and the lack of a viable defense, Stout discussed with McIntyre the option of pleading guilty. Id. at 14–15. After engaging in extensive negotiations with the Government in an effort to obtain a favorable plea agreement, Stout reviewed the plea agreement and guidelines calculation worksheets with McIntyre. Id. at 14–16, 23–24; Email Communications, Gov't Ex. B. She explained to McIntyre the elements of the offense and the Government's proofs. Evidentiary Hr'g Tr. at 16, 24–25. She also explained that the offense carried a 120-month mandatory minimum sentence. Id. at 26. Stout admitted that she sometimes encourages clients to plead guilty but denied pressuring McIntyre into pleading guilty. Id. at 23. While Stout conveyed her willingness to try the case to the best of her abilities, McIntyre ultimately chose to plead guilty. Id. at 15, 23.

With respect to the sentencing stage, Stout prepared by speaking with McIntyre and his family. Id. at 28–29. In her sentencing memorandum and at the sentencing hearing, Stout detailed several mitigating circumstances, including McIntyre's troubled upbringing, his struggles with substance abuse and depression, and the fact that he has three children. Id. at 27–28; Sentencing Mem. at 3 (Dkt. 35); Sentencing Tr. at 10 (Dkt. 51). She also presented evidence regarding median sentencings in comparable child exploitation cases. Sentencing Mem. at 5. Stout stated that her goal was to imbue the proceedings with a degree of "sensitivity and compassion." Evidentiary Hr'g Tr. at 27.

McIntyre, in turn, made no rebuttal to the Government's proffer of evidence at the evidentiary hearing; he did not call any witnesses, offer any proofs, or testify in support of his

allegations regarding Stout's representation. See id. at 35. Consequently, he has failed to establish that Stout's performance fell below an objective standard of reasonableness or that her performance prejudiced him in any way. The Court, therefore, finds that McIntyre is not entitled to relief under this ineffective-assistance theory.

### B. Conditions of Supervised Release

Next, in his amended motion, McIntyre asserts that Stout provided ineffective assistance because she failed to object to certain special conditions of his supervised release. Am. Mot. at 3. McIntyre maintains that the conditions subject him to strict liability for any violation, without the requirement of a mens rea. Id. Specifically, McIntyre challenges the conditions providing that he shall not (i) "associate with minor children under the age of eighteen (18)," (ii) "frequent places where children congregate on a regular basis," or (iii) "patronize any place where [pornographic or sexually explicit] material or entertainment is available." Judgment at Special Conditions No. 7, 8. McIntyre maintains that Stout should have sought a mens rea element for these conditions, requiring that he knowingly violate their terms (e.g., that he "shall not associate with minor children he knows are under the age of eighteen").

Even assuming that Stout's performance was constitutionally deficient insofar as she did not challenge the conditions of supervised release, McIntyre fails to establish that this deficiency prejudiced him. Because McIntyre is currently serving his prison sentence, the conditions of supervised release have not yet become operative. McIntyre may seek modification of mandatory conditions of supervised release at any time, and he may seek to modify non-mandatory conditions (e.g., those delegated to the discretion of probation officers) when those matters become ripe for review. See United States v. Lantz, 443 F. App'x 135, 139 (6th Cir. 2011) (noting that a defendant can seek to modify conditions of supervised release pursuant to 18 U.S.C. § 3583(e)). Because

7

McIntyre cannot establish that he has been prejudiced as a result of the conditions of his supervised release, he is not entitled to relief on this theory of ineffective assistance.

## IV.  CONCLUSION

For the reasons discussed above, the Court denies McIntyre's motion to vacate his sentence (Dkt. 46).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Because McIntyre has not made such a showing, a certificate of appealability shall not issue.

SO ORDERED.

Dated: June 21, 2021  
 Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 21, 2021.

s/Karri Sandusky  
KARRI SANDUSKY  
Case Manager